**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-01135-CMA-KLM

F.H.G. CORPORATION d/b/a CAPSTONE NUTRITION,

Plaintiff and Counterclaim-Defendant,

v.

MUSCLEPHARM CORPORATION,

Defendant and Counterclaim-Plaintiff

v.

INI PARENT, INC. and
MEDLEY CAPITAL CORPORATION

Counterclaim-Defendants.

---

**INI PARENT, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM**

---

Counterclaim-Defendant INI Parent, Inc. ("INI") hereby submits this motion to dismiss Counterclaim-Plaintiff MusclePharm Corporation's ("MusclePharm") Counterclaims pursuant to Fed. R. Civ. P. 12(b)(2) and (6), and states as follows:

**CERTIFICATE UNDER CIVIL PRACTICE STANDARD 7.1D AND LOCAL RULE 7.1**

Pursuant to CMA Civil Practice Standard 7.1D, INI conferred with MusclePharm concerning MusclePharm's failure to meet Fed. R. Civ. P. 9(b)'s heightened pleading standards by informing MusclePharm's counsel of these deficiencies and asking if MusclePharm wished to amend its pleading. MusclePharm declined to do so and responded that its claims were sufficiently pleaded. District of Colorado Local Civil Rule 7.1 does not require a conference for motions brought under Fed. R. Civ. P. 12.

## PRELIMINARY STATEMENT

MusclePharm brought on this lawsuit by repeatedly breaching its contract with F.H.G. Corporation ("Capstone"), including by refusing to pay outstanding arrears of over $22.5 million and failing to meet its minimum volume requirements by over $40 million. MusclePharm attempts to divert attention from this core dispute by hauling INI, Capstone's ultimate parent, to Colorado to defend baseless claims of fraudulent inducement, negligent misrepresentation, and intentional interference with contract. This effort fails for multiple reasons.

INI, a Delaware corporation headquartered in Utah, is not subject to personal jurisdiction in Colorado. INI has never maintained any offices in Colorado, hired any Colorado employees, owned or leased any real or personal property in Colorado, paid taxes in Colorado, or maintained any bank accounts in Colorado. INI engages in no business activity in Colorado, and simply does not have the minimum contacts with Colorado necessary to enable this court to exercise personal jurisdiction.

Further, MusclePharm fails to plead its fraudulent inducement and negligent misrepresentation claims with the specificity required by Rule 9(b). MusclePharm's failure in this regard includes deficiencies concerning the precise speaker, time, place, and manner of alleged misrepresentations. MusclePharm's claims, to the extent based on omissions, also fail because there is no basis to find that INI owed MusclePharm a duty to disclose, and to the extent based on affirmative misrepresentations, fail for failure to allege that INI consciously intended that Capstone would not perform under the contract. These claims simply take MusclePharm's contractual breach allegations

and recast them as tort claims. This duplicative, back-door attempt to drag a contractual non-party into the case should be rejected.

MusclePharm's intentional interference claim should be dismissed because it fails to adequately allege two essential elements of the claim: improper interference and inducement of breach. MusclePharm's claim that INI interfered with the contract because Capstone refused to deliver additional product is contradicted by an express contractual provision that Capstone has "no obligation" to deliver product while MusclePharm is in arrears, which MusclePharm admits was the case. MusclePharm also cannot show that INI's alleged interference was improper since INI, as Capstone's parent company, had a financial interest in Capstone and MusclePharm's business relationship and any purported actions to cease performance under the contract were taken to protect its subsidiary from further damage and even greater arrears.

**FACTUAL BACKGROUND**

INI's subsidiary, Capstone, is a manufacturer of sports nutrition supplements and a party to a manufacturing agreement with MusclePharm, a sports nutrition company that offers products "marketed and sold in more than 120 countries." Counterclaims ("Countercl.") at ¶ 18. MusclePharm owes Capstone over $22.5 million for products manufactured pursuant to the parties' Manufacturing Agreement and its 2015 Amendment, and over an additional $40 million for MusclePharm's failure to meet its minimum purchase requirements. *See* Complaint ("Compl.") at ¶¶ 45–59. After its attempts to resolve this dispute amicably were unsuccessful, on May 16, 2016, Capstone filed the instant action for breach of contract against MusclePharm. On June

21, 2016, MusclePharm filed an answer and counterclaims bringing counterclaims against Capstone for fraudulent inducement, negligent misrepresentation, breach of contract, and breach of implied covenant of good faith and fair dealing, *see* Countercl. at ¶¶ 68–91, claims against INI for fraudulent inducement, negligent misrepresentation, and intentional interference with contract, *see id.* at ¶¶ 68-81, 92-97, and a claim against Medley Capital Corporation ("Medley"), a shareholder of INI, for intentional interference with contract, *see id.* at ¶¶ 92–97.

INI is a Delaware corporation with its principal place of business in Ogden, Utah, and is the ultimate parent of Capstone. *See* Declaration of Jared Leishman ("Decl.") at ¶¶ 4, 11. INI is not registered to do business in Colorado and has no designated agent for service of process in Colorado. *Id.* at ¶ 5. INI has never maintained any offices in Colorado, hired any Colorado employees, or owned or leased any real or personal property in Colorado. *Id.* at ¶ 6. In addition, INI has never paid taxes in Colorado or maintained any bank accounts in Colorado. *Id.* at ¶ 7. INI does not offer products or services in the state of Colorado. *Id.* at ¶ 8. INI is not a party to the Capstone-MusclePharm Manufacturing Agreement. *Id.* at ¶ 9.[1]

## <u>ARGUMENT</u>

### I. The Court Lacks Personal Jurisdiction Over INI

When a non-resident defendant seeks to dismiss a complaint for lack of personal

[1] INI is a party to an Option Agreement, dated March 2, 2015, and a Purchase Warrant Agreement, dated March 2, 2015, with MusclePharm. Decl. at ¶ 10. These agreements provide exclusive jurisdiction in Delaware federal or state courts, and are governed by Delaware law. *Id.* MusclePharm has not pled any claims under these agreements.

jurisdiction, the plaintiff bears the burden of proving that personal jurisdiction is proper. *Impact Prods., Inc. v. Impact Prods., LLC*, 341 F.Supp.2d 1186, 1189 (D. Colo. 2004). Colorado's long-arm statute provides personal jurisdiction to the full extent permissible under due process and its requirements are therefore coextensive with due process. *Id.*

Due process requires the plaintiff to show that the defendant has "'certain minimum contacts' with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'" and it is "reasonable . . . to require the corporation to defend the particular suit" in the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945). Under the minimum contacts test, the court must consider whether the "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

When a defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State," courts in the forum state are deemed to have general jurisdiction over the defendant and may "hear any and all claims against [it]." *Daimler AG v. Bauman*, 134 S.Ct. 746, 754 (2014). The "paradigm all-purpose forums" for general jurisdiction are a corporation's place of incorporation and principal place of business. *Id.* at 760. When a defendant's contacts with the forum state are less pervasive, courts nonetheless may have specific jurisdiction over the defendant if the plaintiff can establish that the defendant has "purposefully directed its activities at [the forum state] or its residents or performed some act by which it purposefully availed itself of the privilege of conducting activities in [the forum state]"

and the "claims arise out of or relate to [defendant's] forum-related activities." *Impact Prods.*, 341 F. Supp. 2d at 1190 (citations omitted). Courts applying the purposeful direction standard in the context of tort actions will exercise specific jurisdiction when the defendant "(1) committed an intentional act (2) expressly aimed at the forum state (3) that had an effect and defendant knew was likely to have an effect in the forum state." *Id.*

Here, MusclePharm's jurisdictional basis is limited to the conclusory allegation that INI "transact[s] business in the State of Colorado and/or engaged in the tortious acts described herein in the State of Colorado." Countercl. at ¶ 16. MusclePharm, however, fails to allege any actual facts that support this conclusory statement, which is simply incorrect. The paradigm forums of general jurisdiction do not exist as INI is incorporated in Delaware with headquarters in Utah. *See* Decl. at ¶ 4. Also, INI is not registered to do business in Colorado, has no designated agent for service of process in Colorado, has never maintained any offices in Colorado, hired any Colorado employees, owned or leased any real or personal property in Colorado, paid taxes in Colorado, or maintained any bank accounts in Colorado. Decl. at ¶¶ 6-7. INI does not provide, sell, or advertise any services or goods in Colorado. Decl. at ¶ 8. In other words, INI lacks the minimum contacts for general jurisdiction.

There is also no basis upon which to exercise specific jurisdiction over INI. According to MusclePharm, INI purportedly made statements or omissions about Capstone's capacity to manufacture products at a facility in ***Tennessee***, not Colorado. Countercl. at ¶¶ 33, 36. In fact, the only allegation in MusclePharm's counterclaims that

provides any link to Colorado is that MusclePharm is headquartered in Colorado. Countercl. at ¶ 11. Courts, however, have routinely dismissed similar efforts to drag out-of-state defendants into Colorado by alleging nothing more than economic loss in the state. *See e.g. Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1255 (D. Colo. 2000) ("The fact that a Colorado plaintiff 'experiences some economic consequences here is insufficient to confer jurisdiction on a Colorado court.'"); *GCI 1985–1 Ltd. v. Murray Props. P'ship*, 770 F.Supp. 585, 590 (D. Colo.1991) (finding no personal jurisdiction over a North Carolina resident accused of inducing a breach of contract by parties in North Carolina where the only connection to Colorado was that the plaintiff was headquartered in the state).

Indeed, courts have warned that exercising jurisdiction purely on the basis of economic loss in the forum state in effect would create a "per se rule" that personal jurisdiction exists any time a plaintiff alleges an intentional tort, which would contradict constitutional principles. *See Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995) ("[T]he mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts."). As a result, courts require the plaintiff to show "'something more' than the injuries it allegedly suffered" took place in Colorado and must point to the "contacts created by defendant with the forum state in committing the alleged torts." *Impact Prods.,* 341 F.Supp.2d at 1191 (citations omitted). Here, that "something more" simply does not exist, and MusclePharm's attempt to drag INI into

Colorado should be rejected.

## II. MusclePharm's Fraudulent Inducement, Negligent Misrepresentation, and Intentional Interference Allegations Also Fail to State Claims

"[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citations omitted). While courts must accept well-pled factual allegations as true, they must "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* at 1191. When allegations are "so general that they encompass a wide swath of conduct, much of it innocent, then plaintiffs 'have not nudged their claims across the line from speculative to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citations omitted).

MusclePharm's fraudulent inducement and negligent misrepresentation claims are also subject to Rule 9(b)'s heightened pleading standards. *See Butera v. Crane*, No. 13 Civ. 03327-RBJ, 2014 WL 5849317, at *8-9 (D. Colo. Nov. 12, 2014). To satisfy Rule 9(b), claims based on affirmative assertions must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Id.* at *8. For omissions claims, plaintiffs must identify "the particular information that should have been disclosed, the reason the information should have been disclosed, the person who should have disclosed it, and the approximate time or circumstances in which the information should have been disclosed." *SEC v. Nacchio*, No. 05-cv-00480-MSK, 2006 WL 2793149, at *3 (D. Colo. Sep. 27, 2006).

### A. MusclePharm's Fraudulent Inducement and Negligent Misrepresentation Allegations Fail to Satisfy Rule 9(b)

MusclePharm's fraudulent inducement and negligent misrepresentation claims against INI are based on alleged misrepresentations and omissions concerning Capstone's manufacturing capacity at a Tennessee facility. *See* Countercl. at ¶¶ 30, 33-36. MusclePharm, however, repeatedly fails to plead sufficient detail to satisfy Rule 9(b)'s requirement of specificity with respect to "who, what, when, where, and how." *U.S. ex rel. Sikkenga v. Regence Bluecross BlueShield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006). Specifically, MusclePharm fails to identify any INI speaker responsible for the alleged misrepresentations. MusclePharm mostly relies on allegations that the purported representations were made by "Capstone and INI" without providing further detail. *See* Countercl. at ¶ 3, 69(a)-(d). These types of general references to a party-entity are insufficient. *See Butera*, 2014 WL 5849317, at *9 (general references to "Defendant" are insufficient); *Yates v. Portofino Real Estate Props. Co., LLC*, No. 08 Civ. 00324-PAB, 2009 WL 2588833, at *2 (D. Colo. Aug. 17, 2009) (same).

In a few instances, MusclePharm attributes statements collectively to Capstone's Peter Miller and Gregory Horn. *See* Countercl. at ¶¶ 30, 33, 36. This is still deficient because MusclePharm lumps together two alleged speakers, Miller and Horn, without clarifying which individual was responsible for which statement and without identifying any individual making statements on behalf of INI. *See Robbins*, 519 F.3d at 1250 (rejecting a "list of the defendants named individually but with no distinction as to what acts are attributable to whom"). While MusclePharm alleges, as a side note, that Greg Horn "was also INI's CEO," it also expressly alleges that Horn was a Capstone

employee. *See* Countercl. at ¶ 30. MusclePharm fails to allege that any purported statements made by Horn were made on behalf of INI. MusclePharm has improperly left the Court and INI to speculate when, where, or how INI made the statements and who at INI made them.[2] *See Purac Am. Inc. v. Birko Corp.*, No. 14 Civ. 01669, 2015 WL 1598065, at * 6 (D. Colo. Apr. 8, 2015); *Butera*, 2014 WL 5849317, at *8; *Gunningham v. Standard Fire Ins. Co.*, No. 07–cv–02538–REB–KLM, 2008 WL 4377451, at *2 (D. Colo. Sept. 19, 2008).

The same is true with respect to MusclePharm's omission allegations. While MusclePharm makes general assertions regarding the information it claims should have been disclosed, it does not allege the reason INI should have made the disclosure, the person at INI who should have made the disclosures, or the time INI should have made the disclosures. *See* Countercl. at ¶¶ 34, 36, 69(e)-(f), 77. Accordingly, MusclePharm's fraudulent inducement and negligent misrepresentation claims fail to satisfy Rule 9(b).

### B. MusclePharm Otherwise Fails to State Its Fraudulent Inducement and Negligent Misrepresentation Claims

To the extent its fraudulent inducement and negligent misrepresentation claims are based on nondisclosure, MusclePharm must show that the defendant had a duty to disclose information. *Burman v. Richmond Homes Ltd.*, 821 P.2d 913, 918 (Colo. App. 1991) (fraudulent non-disclosure requires showing duty to disclose) (citations omitted);

[2] MusclePharm's only attempt to plead any detail beyond the content of the statements is its allegation that "in or about December 2014, while Capstone was concealing the extent of the problems with the Cornerstone systems integration and the transition of manufacturing facilities, Capstone and INI proposed that MusclePharm amend the Manufacturing Agreement . . . ." Countercl. at ¶ 35. An approximate date, however, is insufficient to remedy MusclePharm's otherwise deficient pleading.

*Cent. Masonry Corp. v. Bechtel Nat., Inc.*, 857 F. Supp. 2d 1160, 1163–64 (D. Colo. 2012) (negligent misrepresentation based on "nondisclosure connotes inaction despite a duty"). "Generally, a person has a duty to disclose to another with whom he deals facts that in equity or good conscience should be disclosed." *Burman*, 821 P.2d at 918. When dealing with "facts basic to [a] transaction," a duty arises when a party "knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts." *Id.*

With respect to the 2015 Amendment, INI and MusclePharm did not have a relationship such that MusclePharm "would reasonably expect a disclosure" from INI. INI was not a party to the Manufacturing Agreement, and MusclePharm does not adequately allege facts to suggest INI was involved in the discussions leading up to the 2015 Amendment. Even if MusclePharm had adequately alleged that INI was involved in those discussions, MusclePharm still fails to allege that INI made any statements at all, much less any statements that would "create a false impression unless other facts [we]re disclosed." *Id*. At most, MusclePharm's allegations conflate two alleged speakers, Miller and Horn, both of whom are alleged to be Capstone employees, without distinguishing between the two individuals' purported statements or identifying either as acting on behalf of INI. *See* Countercl. at ¶¶ 30, 33, 36. Accordingly, there is no basis to find that INI owed MusclePharm a duty to disclose.

MusclePharm's claims should also be dismissed because they are based upon a promise of future performance—i.e. that INI promised that the transition to the new

facility would improve "Capstone's service of MusclePharm's account" and increase production capacity. Countercl. at ¶¶ 30, 36. But fraudulent inducement and negligent misrepresentation cannot be predicated solely upon "a promise to perform a particular act at a future time." *Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1114 (D. Colo. 2010); *see also High Country Movin', Inc. v. U.S. W. Direct Co.*, 839 P.2d 469, 471 (Colo. App. 1992) ("negligent misrepresentation cannot be based solely on the nonperformance of a promise to do something at a future time"). To prevail on such claims, "the pleader must allege facts showing that, at the time of the promise, the speaker consciously harbored a present intention not to perform the promised act." *Tara Woods*, 731 F. Supp. 2d at 1114. MusclePharm pleads no such allegations.[3]

The fraudulent inducement and negligent misrepresentation claims are also barred by the economic loss doctrine, which "provides that a 'party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law.'" *Hottinger Excavating & Ready Mix, LLC v. R.E. Crawford Constr., LLC*, No. 14-CV-00994-KMT, 2014 WL 6461350, at *3 (D. Colo. Nov. 18, 2014). Here, MusclePharm claims it suffered economic loss when Capstone allegedly breached the Manufacturing Agreement by failing to timely manufacture and deliver product. *See* Countercl. at ¶¶

[3] MusclePharm attempts to cover for this deficiency by alleging that Capstone and INI knew the delays would not be quickly resolved and knew Capstone did not have the capacity to fill MusclePharm's orders. *See* Countercl. at ¶ 34. These allegations fall short of alleging that INI itself consciously intended that Capstone would not perform under the contract and, in any event, are all conclusory statements not to be accepted as true. *Khalik*, 671 F.3d at 1191 (courts must "disregard conclusory statements").

84(c), (d). MusclePharm then claims that INI caused it to enter into the 2015 Amendment by promising that Capstone would perform under the contract by timely manufacturing and delivering product. *See* Countercl. at ¶¶ 69, 75.

The economic loss doctrine bars these claims against INI—even as a third party—as they are "predicated upon the mere nonperformance of a promise or contractual obligation" and thus there is no duty independent from the contract. *Hottinger,* 2014 WL 6461350, at *4. Critically, MusclePharm provides only conclusory assertions, unsupported by any facts, that INI knew that the alleged misrepresentations were false at the time the parties entered into the 2015 Amendment. *See* Countercl. at ¶¶ 4, 31, 34. Without specific factual allegations demonstrating INI's alleged knowledge in this regard, MusclePharm cannot demonstrate that its claims arise under an independent tort law duty of care. *Hottinger,* 2014 WL 6461350, at *3. The Colorado Supreme Court's recent decision in *Rees v. Unleaded Software, Inc.*, 2016 CO 51, ¶ 13, does not alter this conclusion. In finding a sufficiently alleged independent tort duty, the *Rees* Court specifically pointed to factual allegations that, at the time the parties entered into the contract, the defendants did not do the type of work covered by the contract and even "jokingly" referred to their experience doing that type of work as the "little green ball in the corner" as support for the claim that defendants knew their representations to be false. *Id.* at ¶ 7. MusclePharm makes no similar allegations and thus there is no independent duty upon which MusclePharm may base its tort claims.

### C. MusclePharm Also Fails to State an Intentional Interference Claim

To state an intentional interference claim, MusclePharm must show that INI was

aware of the Capstone/MusclePharm agreement, intended for Capstone to breach that agreement, and induced Capstone to breach or made it impossible for Capstone to perform. *See Birko*, 2015 WL 1598065, at * 5. MusclePharm must also establish that the alleged interference was "improper." *Warne v. Hall*, 2016 CO 50, ¶ 25.

To the extent this claim is based on INI allegedly causing Capstone to stop delivering product, MusclePharm has failed to allege that INI induced a breach. The contract expressly provides that "Capstone Nutrition shall be under no obligation to accept orders from MUSCLEPHARM or to ship on accepted orders if any payment is in arrears." Compl.Ex. B at § 5.2. Given that MusclePharm was millions of dollars in arrears (as acknowledged at counterclaim paragraph 58), Capstone was within its rights to cease providing product and could not have been induced to breach in this manner.

The claim otherwise fails because any actions taken by INI could not have been legally improper. As Capstone's ultimate parent company, INI has a financial interest in the success of Capstone's and MusclePharm's business relationship. The Tenth Circuit has rejected intentional interference claims when the defendant "had a financial interest" in the party alleged to have breached the contract at issue because such an interest gives rise to a "privilege." *Howard v. Chrysler Corp.*, 705 F.2d 1285, 1287 (10th Cir. 1983). Therefore, even if INI had advised Capstone to cease performance under the Manufacturing Agreement, which stopped MusclePharm's over $22.5 million in arrears from growing even larger, such actions would not be improper.

MusclePharm also fails to sufficiently allege INI had an improper motive. It claims that Medley "viewed Capstone as a distressed opportunity from which it could

generate immediate income" and that Medley and INI then sought "an opportunity to gain control of MusclePharm and its significant revenue-generating business." Countercl. at ¶ 62. These conclusory statements do not "raise the right to relief above the speculative level" and must be disregarded. *Twombly*, 550 U.S. at 555.[4]

MusclePharm also fails to plead sufficient facts that INI induced a contractual breach and instead alleges that INI "caused" Capstone to cease delivery of products, "caused" Capstone to refuse to provide product certifications, and "caused" Capstone to engage in a number of other purported breaches of the contract. *See* Countercl. at ¶¶ 63, 66-67. Such conclusory statements fail to allege any facts concerning what steps INI might have taken to cause a breach and thus fail to "nudge" MusclePharm's "claims across the line from speculative to plausible.'" *Robbins*, 519 F.3d at 1247. Further, MusclePharm's theory of liability against INI relies on the implausible assumption that Capstone would not have ceased delivering products to MusclePharm but for INI's interference. MusclePharm owed millions in arrears when Capstone stopped providing product. Countercl. at ¶ 58. This growing debt is the plausible reason Capstone refused to continue to make product for MusclePharm. MusclePharm's allegations do not plausibly suggest that INI caused Capstone to cease delivering product.

MusclePharm's failure to plead sufficient factual allegations that INI improperly interfered with or induced Capstone to breach the agreement requires dismissal.

## **CONCLUSION**

For the reasons above, MusclePharm's claims against INI should be dismissed.

[4] MusclePharm's conclusory allegation that Medley proposed that MusclePharm issue Capstone a promissory note, Countercl. at ¶ 63, makes no mention of INI.

Dated: July 27, 2016

WEIL, GOTSHAL & MANGES LLP

/s/_*David L. Yohai*____

David L. Yohai
John R. Gerba
767 Fifth Avenue
New York, New York 10153
Tel.: (212) 310-8000
Fax: (212) 310-8007
David.Yohai@weil.com
John.Gerba@weil.com

*Counsel for Counterclaim-Defendant INI Parent, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2016, I caused true and correct copies of INI Parent, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim, the Declaration of Jared Leishman in Support of INI Parent, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim, and a Proposed Order Granting INI Parent, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim to be served on the counsel listed below by filing said documents with the Clerk of the Court via CM/ECF. I also caused a true and correct copy of the aforementioned documents to be served on the counsel listed below via FedEx overnight delivery.

<u>FedEx Recipients</u>
Jonathan E. Minsker
Gavin D. Schryver
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019
Phone: (212) 506-1891
Fax: (212) 835-5291
JMinsker@kasowitz.com
GSchryver@kasowitz.com

*Counsel for Counterclaim-Plaintiff MusclePharm Corporation*

Amber J. Münck
Jeffrey M. Lippa
Greenberg Traurig, LLP
1200 17th Street, Suite 2400
Denver, Colorado 80202
Phone: (303) 572-6500
Fax: (303) 572-6540
muncka@gtlaw.com
LippaJ@gtlaw.com

*Counsel for Counterclaim-Defendant Medley Capital Corporation*

<u>CM/ECF Recipients</u>
Richard B. Benenson, #32566
Brownstein Hayatt Farber Schreck LLP
410 Seventeenth Street, Ste 2200
Denver, Colorado 80202
Phone: (303) 223-1100
Fax: (303) 223-1111
rbenenson@bhfs.com

*Counsel for Counterclaim-Plaintiff MusclePharm Corporation*

Dated: July 27, 2016

/s/_ *David L. Yohai*__

WEIL GOTSHAL & MANGES LLP
David L. Yohai
767 Fifth Avenue
New York, New York 10153
Tel.: (212) 310-8000
Fax: (212) 310-8007
David.Yohai@weil.com

*Counsel for Counterclaim-Defendant INI Parent, Inc.*