**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-01135-CMA-KLM

FHG CORPORATION d/b/a CAPSTONE NUTRITION,
*Plaintiff/Counterclaim Defendant*,
v.

MUSCLEPHARM CORPORATION,
*Defendant/Counterclaim Plaintiff*,
v.

INI PARENT, INC. and
MEDLEY CAPITAL CORPORATION
*Third-Party Claim Defendants.*

---

**CAPSTONE'S MOTION TO DISMISS CERTAIN MUSCLEPHARM AMENDED COUNTERCLAIMS UNDER RULE 12(b)(6)**

---

Counterclaim Defendant F.H.G. Corporation ("Capstone") hereby submits this motion to dismiss Counts I, II, V, and VI of MusclePharm Corporation's ("MusclePharm's") amended counterclaims pursuant to Rule 12(b)(6), and states as follows:

**CERTIFICATE UNDER CIVIL PRACTICE STANDARD 7.1D AND LOCAL RULE 7.1**

Pursuant to CMA Civil Practice Standard 7.1D, Capstone conferred with MusclePharm concerning MusclePharm's failure to meet Rule 9(b)'s heightened pleading standards by informing MusclePharm's counsel of these deficiencies.

**PRELIMINARY STATEMENT**

MusclePharm owes Capstone over $22.5 million for past goods delivered but not paid for in breach of the parties' contract. MusclePharm also breached other parts of the contract, including its minimum purchase requirements, causing over $40 million of additional damage to Capstone. Despite Capstone's efforts to amicably resolve this dispute, MusclePharm has refused to pay the amounts it undeniably owes, forcing

Capstone to initiate this action. In an effort to shift the focus away from MusclePharm's clear breaches, MusclePharm brings inappropriate, baseless, and legally deficient amended counterclaims against Capstone for fraudulent inducement, negligent misrepresentation, and breaches of the implied covenant of good faith and fair dealing.[1] MusclePharm brings these amended counterclaims despite representing to Capstone during the CMA Civ. Practice Standard 7.1D conference that its initial counterclaims were sufficiently pled and that it would stand on its original pleading. In violation of the Court's practice standards, once Capstone moved to dismiss, MusclePharm ignored its previous representation and filed an amended counterclaim rather than an opposition brief. Nevertheless, these amended counterclaims suffer from the same defects as MusclePharm's initial counterclaims and should be dismissed with prejudice for the same reasons.

*First*, the parties' contract has an ADR provision requiring written notice of any dispute, good faith negotiations, and mediation ***before*** a party can file suit. Capstone complied with these requirements prior to bringing its breach of contract claims, but MusclePharm has wholly ignored them. Prior to filing its counterclaims, MusclePharm never claimed it was fraudulently induced or that Capstone made any negligent misrepresentations. MusclePharm's failure to comply with the contractually required ADR prerequisites renders these claims premature and improper.

*Second*, MusclePharm's fraudulent inducement and negligent misrepresentation claims should be dismissed for failing to meet the factual specificity required under Rule 9(b). Capstone first alerted MusclePharm to its pleading deficiencies prior to initially

[1] The amended counterclaims also include two breach of contract claims. Neither claim has merit, but Capstone is not seeking their dismissal at the pleading stage.

moving to dismiss. MusclePharm maintained that its counterclaims were sufficiently pled—yet once Capstone moved to dismiss, MusclePharm amended its improperly pled counterclaims, rather than oppose Capstone's motion. MusclePharm, however, still fails to cure its Rule 9(b) problems. Although MusclePharm has amended some of its allegations to include the purported speaker's identity and stray references to what was allegedly said, MusclePharm fails to allege any other specifics about the representations, frequently omitting the precise times, locations, and modes of communication. And in other cases, MusclePharm continues to attribute general statements to "Capstone" or multiple actors without sufficient detail.

*Third*, MusclePharm's fraudulent inducement and negligent misrepresentation claims are also substantively duplicative of its breach of contract claim and must be dismissed. MusclePharm cannot base its fraudulent inducement and negligent misrepresentation counterclaims on allegations that also form the basis for its contract claim. Indeed, Colorado's economic loss doctrine prohibits claims arising in contract from being shoehorned into tort claims, which is precisely what MusclePharm is doing here. In addition, MusclePharm's counterclaims provide only conclusory assertions that Capstone knew any alleged statements were false when the 2015 Amendment was executed without any supporting factual allegations, which precludes MusclePharm from establishing a tort duty independent of the contract.

*Fourth*, even if the Court looks beyond the prematurity and pleading deficiencies, MusclePharm's fraudulent inducement and negligent misrepresentation claims are in inactionable promises of future performance that are in any event barred by the merger and integration clause in the parties' contract. That clause provides that the written

agreement "represents the entire understanding and agreement of the parties." Compl. Ex. A § 19.6; Ex. B § 9. Yet, MusclePharm's fraudulent inducement and negligent misrepresentation claims are based on alleged extra-contractual understandings concerning productivity increases and production timing at an upgraded facility. The integration clause bars MusclePharm from attempting to back door these purported representations into the contract.

*Finally*, MusclePharm's implied covenant of good faith and fair dealing claims should be dismissed because neither the Manufacturing Agreement nor the Quality Agreement vest Capstone with the "discretion" required to maintain a breach of implied covenant claim. This discretion must be provided at contract formation and leave one party with the power to unilaterally set the terms of performance. But MusclePharm does not—and indeed, cannot—point to a provision in either contract that provides Capstone with the one-sided, post-formation ability to set the terms of the performance.

Accordingly, the Court should reject MusclePharm's attempts to divert attention from the straightforward contractual issues in this case and should dismiss MusclePharm's fraudulent inducement, negligent misrepresentation, and breach of implied covenant of good faith and fair dealing counterclaims, with prejudice.

## PROCEDURAL HISTORY

MusclePharm is a sports nutrition company that sells supplements "manufactured for MusclePharm by third parties under manufacturing agreements." Am. Countercl. ¶ 19. Capstone is one such manufacturer and the parties' relationship is governed by the 2013 Manufacturing Agreement and its 2015 Amendment (attached to Capstone's complaint as Exhibits A and B, respectively). *See id.* ¶ 20. MusclePharm

owes Capstone over $22.5 million in damages for past-due payments for product manufactured pursuant to that agreement, and over an additional $40 million for MusclePharm's failure to meet its minimum purchase requirements under the contract. *See* Compl. ¶¶ 45–59. In total, MusclePharm's breach of contract has caused over $60 million in damage to Capstone. Prior to initiating this suit, Capstone complied with the contract's ADR provision and the parties attended mediation regarding the contractual issues in this case. *See* Compl. ¶ 12. After its attempts to resolve this contract dispute amicably were unsuccessful, on May 16, 2016, Capstone filed the instant action for breach of contract against MusclePharm.

On June 21, 2016, MusclePharm filed an answer and counterclaims. MusclePharm, however, did not limit its counterclaims to its contractual counterparty, but also swept INI Parent, Inc. (Capstone's ultimate parent) and Medley Capital Corporation into this action, neither of which are parties to the contract at issue. MusclePharm filed its amended counterclaims on August 22, 2016.

## ARGUMENT

### I. LEGAL STANDARDS

"[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citation omitted). While the Court must accept well-pled factual allegations as true, the Court must "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* at 1191. A claim is facially plausible when the plaintiff pleads factual content that allows the Court to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (citation omitted). If the allegations, however, are "so general that they encompass a wide swath of conduct, much of it innocent, then plaintiffs 'have not nudged their claims across the line'" from speculative to plausible. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted).

In addition, Rule 9(b)'s heightened pleading standards apply to MusclePharm's fraudulent inducement and negligent misrepresentation claims. *See Butera v. Crane*, No. 13 Civ. 03327 RBJ, 2014 WL 5849317, at *9 (D. Colo. Nov. 12, 2014). To satisfy these standards, a claim based on an affirmative assertion must be plausible and must "'set forth [1] time, [2] place and [3] contents of the false representation, [4] the identity of the party making the false statements and [5] the consequences thereof.'" *Id.* at *8 (citation omitted). If the claim is based on an omission, it must identify "[1] the particular information that should have been disclosed, [2] the reason the information should have been disclosed, [3] the person who should have disclosed it, and [4] the approximate time or circumstances in which the information should have been disclosed." *SEC v. Nacchio*, No. 05 Civ. 480 MSK-CBS, 2006 WL 2793149, at *3 (D. Colo. Sep. 27, 2006).

## II. MUSCLEPHARM'S FRAUDULENT INDUCEMENT AND NEGLIGENT MISREPRESENTATION COUNTERCLAIMS SHOULD BE DISMISSED

### A. MusclePharm Fails to Comply with the Contract's ADR Provision

MusclePharm's fraudulent inducement and negligent misrepresentation counterclaims should be dismissed under Rule 12(b)(6) because MusclePharm bypassed the contract's dispute resolution requirements. Both the 2013 Manufacturing Agreement and the 2015 Amendment contained a broadly worded ADR requirement under which it was "the intent of the parties that any dispute be resolved promptly through good faith negotiation." Compl. Ex. A § 15; Ex. B § 8. For a party to engage this

process, they had to provide "written notice to the other party describing the particulars of the dispute." *Id.* If good faith negotiations between the parties were insufficient to resolve the dispute, the parties were required to promptly submit the "dispute to mediation . . . ***prior*** to either party bringing suit." *Id.* (emphasis added).

MusclePharm, however, has not pled compliance with these requirements—nor could it, since it bypassed the contract's entire dispute resolution process. Instead of providing Capstone notice of its fraudulent inducement and negligent misrepresentation claims, holding good faith negotiations over those claims, and submitting them to mediation if negotiations were unsuccessful, MusclePharm ignored the contract's dispute resolution requirements and proceeded directly to federal court. MusclePharm was clearly aware of this prerequisite to bringing suit because Capstone complied with the requirement before filing its complaint in this action and pled compliance. *See id.* ¶ 12. The first time Capstone was provided any notice that MusclePharm believed it had been fraudulently induced or that Capstone had made negligent misrepresentations was when MusclePharm filed its initial counterclaims. Indeed, with its amended counterclaims, MusclePharm has again bypassed this contractual requirement, instead relying on insufficiently pled facts and duplicative allegations.

Accordingly, since MusclePharm bypassed the contract's dispute resolution requirements, the Court should dismiss MusclePharm's fraudulent inducement and negligent misrepresentation counterclaims. *See City & Cty. of Denver v. Dist. Ct. In & For City & Cty. of Denver*, 939 P.2d 1353, 1364 (Colo. 1997) (en banc) (dismissing a claim because a party cannot "by-pass an ADR provision of its agreement").

### B. MusclePharm Fails to Meet Rule 9(b)'s Pleading Requirements

Even if the Court considered the merits of MusclePharm's allegations, the fraudulent inducement and negligent misrepresentation claims should be dismissed for the independent reason that MusclePharm failed to comply with Rule 9(b)'s heightened pleading requirements. MusclePharm bases both of these claims on allegations that Capstone told MusclePharm its new facility would increase production capacity and that Capstone omitted to tell MusclePharm that it somehow "knew" delays would occur and cost MusclePharm millions of dollars in damage. *See* Am. Countercl. ¶¶ 72, 78–80. MusclePharm makes these implausible, unsupported, and farfetched allegations to shift the Court's attention away from its clear failure to perform under the parties' contract. Rule 9(b) exists as a gatekeeper against these types of hollow allegations.

For affirmative assertions, Rule 9(b) requires that MusclePharm plead the time, place, and contents of the alleged misrepresentation, as well as the identity of the party making the representation and its consequences. *See Butera*, 2014 WL 5849317, at *8. For the majority of its allegations, MusclePharm does not reference any specific date or even month. *See* Am. Countercl. ¶¶ 30, 31, 32, 35, 37. In three instances, it simply alleges vaguely that the representations occurred "in or about" November and December 2014. *Id.* ¶¶ 33, 34, 36. In one of these instances, MusclePharm references a PowerPoint presentation in a November 21, 2014 meeting. *Id.* ¶ 33. That presentation, however, related to a proposed business combination of Capstone and MusclePharm, *see* Gerba Decl. Ex. A, which never happened. On its face, the presentation proposed various possibilities. *Id.* In no way could such a presentation be the basis for any fraud claim. Indeed, MusclePharm merely cherry-picks certain phrases from a single slide about how an alternative "plan B" "could work," *id.* at 12, and

attempts to assert that they relied upon such phrases in entering into an amendment to the Manufacturing Agreement months later. The presentation makes no reference to any such Manufacturing Agreement amendment, much less makes any promises to MusclePharm. *Id.*[2] Even if this presentation rose to the level of a promise of future performance (and it does not), as explained below, such promises are not actionable fraud and at best could only be cognizable as a contract claim.

MusclePharm's inability to allege specifically when each representation occurred is also coupled with its failure to allege specifically where any representation was made. *See Butera*, 2014 WL 5849317, at *8 (dismissing a complaint because while it mentioned "an in-person meeting [] in New York (without giving a date)" and "one additional meeting in Colorado," it "never says specifically when or where any alleged misrepresentation was made"). MusclePharm also continues to vaguely attribute many statements to "Capstone and INI" (rather than a person) in its amended counterclaim. *See* Am. Countercl. ¶¶ 30, 35, 36. These types of general references to a party-entity are insufficient to comply with Rule 9(b). *See Koch v. Koch Indust.,* 203 F.3d 1202, 1237 (10th Cir. 2000) (general references to "Defendant" were insufficient under Rule 9(b)). Other times, MusclePharm lumps together Peter Miller and Greg Horn and attributes a few statements to that "lump" without delineating who actually made the statements. MusclePharm's attempt to lump parties together—whether "Capstone and INI" or "Miller and Horn"—and attribute statements to multiple parties further shows their inability to identify the precise speaker and any actionable misrepresentation as

[2] On a motion to dismiss, courts can consider documents referred to in the complaint where they are "central to plaintiff's claim and the parties do not dispute the documents' authenticity." *Schwartz v. Creany*, No. 09 Civ. 02127-CMA-CBS, 2011 WL 1132812, at *1 (D. Colo. Mar. 29, 2011).

required under Rule 9(b). In the single instance where MusclePharm does attempt to tie a speaker to an alleged representation, Am. Countercl. ¶ 33, it still fails to specifically allege the place the statements were made, to whom any of these statements were made, or how these statements could be actionable other than in a breach of contract claim.

MusclePharm also fails to allege a sufficient factual nexus between the alleged statements—allegedly made in November and December 2014—and any reliance on those statements. Instead, MusclePharm offers a conclusory statement that it “relied” on the representations “by entering into the 2015 Amendment.” *Id.* ¶¶ 74, 82. Any such reliance is undermined by the fact that four months intervened between the alleged statements and amendment date, during which MusclePharm presumably would have known the state of affairs at the manufacturing facility. MusclePharm alleges no facts indicating otherwise. MusclePharm’s omission-based claims suffer from the same pleading defects. Again, MusclePharm fails to allege the reason the information should have been disclosed, the person who should have disclosed it, and the approximate time or circumstances in which the information should have been disclosed. *See id.* ¶ 38. And like with the representation allegations, MusclePharm’s omissions allegations also improperly conflate and blame multiple parties for the alleged failure to disclose.

At bottom, MusclePharm has failed to adequately allege the “‘who, what, when, where and how’” for each of the alleged misrepresentations and omissions. *United States ex rel. Sikkenga v. Regence Bluecross BlueShield of Utah*, 472 F.3d 702, 726–27 (10th Cir. 2006) (citation omitted). The Court and Capstone are left guessing as to the time, place, and manner of these misrepresentations and omissions, and for this

reason they are clearly insufficient under Rule 9(b). *See Purac Am. Inc. v. Birko Corp.*, No. 14 Civ. 01669-RBJ, 2015 WL 1598065, at * 6 (D. Colo. Apr. 8, 2015) ("Birko has failed to allege who made the false statements to Birko customers or when and where those statements were made."); *Gunningham v. Standard Fire Ins. Co.*, No. 07 Civ. 02538 REB-KLM, 2008 WL 4377451, at *2 (D. Colo. Sept. 19, 2008) ("[P]laintiff says nothing about how this information was communicated to the plaintiff, where the plaintiff was located when such communications were received, or the identity of any representative of the defendants who communicated this information on behalf of the defendants."). When MusclePharm's failure to plead sufficient facts—after having a second bite at the apple to do so—is coupled with its failure to comply with the contract's dispute resolution provision, it becomes evident these counterclaims are simply baseless, knee-jerk responses to Capstone's breach of contract suit.

### C. MusclePharm's Claims are Duplicative

MusclePharm's fraudulent inducement and negligent misrepresentation counterclaims should also be dismissed because they are duplicative of MusclePharm's claim that Capstone breached the Manufacturing Agreement. Under Colorado law, the economic loss doctrine bars MusclePharm from seeking relief under tort law for claims that emanate from Capstone's alleged failure to perform its contractual obligations. *See Hottinger Excavating & Ready Mix, LLC v. R.E. Crawford Constr.*, No. 14 Civ. 00994 KMT, 2014 WL 6461350, at *3 (D. Colo. Nov. 18, 2014). MusclePharm bases its fraudulent inducement and negligent misrepresentation counterclaims on alleged statements concerning increased production capacity and an alleged failure to disclose that delays would occur, which also serve as the basis for MusclePharm's contract

claim. Any assertion that these tort claims are independent of MusclePharm's contract claim would be contradicted by the almost complete overlap between MusclePharm's fraudulent inducement, negligent misrepresentation, and breach of contract pleadings.

For example, in support of its tort claims, MusclePharm alleges that Capstone misrepresented that its new facility would improve "service of MusclePharm's account" and "increase its production capacity," and that Capstone failed to accurately communicate information about "its manufacturing capabilities." Am. Countercl. ¶¶ 72(a),(b), 78. But these allegations directly overlap with MusclePharm's breach of contract claim, which alleges Capstone breached its alleged contractual representation "that it had the requisite manufacturing capabilities to supply MusclePharm." *Id.* ¶ 87(a). Similarly, MusclePharm's tort allegations assert that Capstone failed to disclose "problems with product delivery." *Id.* ¶¶ 72(e), 80. Yet, MusclePharm's breach of contract claim alleges that Capstone breached the contract by "failing to timely deliver product" and "refusing to deliver product." *Id.* ¶¶ 87(c), (d).

Since MusclePharm has not sufficiently pled facts showing that its fraudulent inducement and negligent misrepresentation claims are distinguishable from its contract claim, those duplicative tort claims are barred by the economic loss doctrine. *See Hottinger*, 2014 WL 6461350, at *3. The *Hottinger* court dismissed tort claims because they did "not include any *factual* allegations" specifically supporting the tort claims and were instead solely "predicated upon the mere nonperformance of a promise or contractual obligation." *Id.* Here, MusclePharm's duplicative tort claims contain only conclusory assertions that Capstone and INI knew that alleged statements concerning production capacity and delays were false when made, without offering any actual ***facts***

supporting those implausible conclusions. *See* Am. Countercl. ¶¶ 4, 32, 35.

The Colorado Supreme Court's recent decision in *Van Rees v. Unleaded Software, Inc.*, 2016 CO 51, ¶ 13 does not alter this conclusion. *Van Rees* holds that "[t]o survive a motion to dismiss based on the economic loss rule" a plaintiff must "allege sufficient *facts*, taken in the light most favorable to him, that would amount to the violation of a tort duty that is independent of the contract." *Id.* ¶ 19 (emphasis added). Critically, and in stark contrast to MusclePharm's allegations, the plaintiff in *Van Rees* alleged specific facts suggesting the defendant knew it lacked the capacity to perform under the contract and did not intend to perform. *Id.* ¶ 7. Indeed, the pleadings there included specific allegations that, at the time of entry, the defendant was not even performing the type of work covered by the contract and "jokingly" referred to its experience doing that type of work as the "little green ball in the corner.'' *Id.* Here, there are no such parallel factual allegations to support an independent tort duty. MusclePharm's fraudulent inducement and negligent misrepresentation claims should, therefore, be dismissed. *See Port-A-Pour, Inc. v. Peak Innovations, Inc.*, No. 13 Civ. 01511 WYD-BNB, 2014 WL 3512851, at *4 (D. Colo. July 14, 2014) (no independent duty where allegations underlying tort and contract claims are the same).

**D. MusclePharm's Tort Claims are Not Actionable**

Even if an independent duty existed, MusclePharm's fraudulent inducement and negligent misrepresentation claims are not actionable because MusclePharm cannot demonstrate that it relied on a material representation or omission. *See Allen v. Steele*, 252 P.3d 476, 482 (Colo. 2011) (en banc). Allegations concerning promises of future performances—such as better margins or increased production capacity, *see* Am.

Countercl. ¶¶ 31, 33, 34, 37—cannot form the basis of these claims, unless "the pleader [] allege[d] facts showing that, at the time of the promise, the speaker consciously harbored a present intention not to perform the promised act." *Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1114 (D. Colo. 2010). MusclePharm alleges no such facts, rendering the statements inactionable.

Also, the contract's integration clause provides that it "represents the entire understanding and agreement of the parties." Compl. Ex. A § 19.6; Ex. B § 9. This clause, entered into by two sophisticated parties, ensures that all material terms and representations are included in the contract. *See Steak n Shake Enters., Inc. v. Globex Co.*, 110 F. Supp. 3d 1057, 1083 (D. Colo. 2015) (finding a fraudulent inducement claim barred by an integration clause). The contract's integration clause, therefore, prevents MusclePharm from claiming that alleged pre-contractual representations concerning production capacity and delivery induced it to enter into the agreement. Indeed, the agreement includes express provisions dealing with production capacity and delivery timing further demonstrating that the parties were not relying on alleged pre-contractual statements. *See* Compl. Ex. A §§ 5.2, 11; Ex. B § 2.1.

## III. MUSCLEPHARM'S IMPLIED COVENANT CLAIM WARRANTS DISMISSAL

MusclePharm also alleges that Capstone breached a covenant of good faith and fair dealing "implied" in both the Manufacturing Agreement and Quality Agreement by using its "discretion" under both contracts in bad faith. A party, however, can only maintain a breach of good faith claim "'when the manner of performance under a specific contract term allows for discretion on the part of either party.'" *Sharpes v. JPMorgan Chase & Co.*, No. 14 Civ. 02718-REB-KLM, 2015 WL 5440626, at *6 (D.

Colo. Aug. 26, 2015) (quoting *McDonald v. Zions First Nat'l Bank,* 348 P.3d 957, 967 (Colo. App. 2015)). "Discretion in performance occurs 'when the parties, at formation, defer a decision regarding performance terms of the contract' leaving one party with the power to set or control the terms of performance after formation." *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006) (en banc) (citation omitted).

MusclePharm fails to point to any provision in either contract providing Capstone with the necessary discretion. In its Manufacturing Agreement claim, MusclePharm alleges that Capstone exercised its "discretion" concerning the delivery of product and the provision of information to MusclePharm in bad faith. Am. Countercl. ¶ 97. But the Manufacturing Agreement required Capstone to deliver product "within the time both parties agreed upon," Compl. Ex. A § 11, with "all requested delivery dates [] subject to reasonable lead times," but with no obligation to deliver if MusclePharm was in arrears, *id.* at Ex. B §§ 4, 5.2. MusclePharm also alleges that Capstone exercised its "discretion" under the Quality Agreement in connection with the provision of information and the investigation of complaints, Am. Countercl. ¶ 102, but again does not, and indeed cannot, allege any actual facts showing that Capstone controlled the agreement's terms in these regards. MusclePharm simply points to no language allowing Capstone to unilaterally set the terms of performance at its discretion. These claims should, therefore, be dismissed.

## CONCLUSION

Accordingly, Capstone's motion to dismiss should be granted in its entirety.

Dated: September 30, 2016

WEIL, GOTSHAL & MANGES LLP

*/s/ David L. Yohai*

David L. Yohai
John R. Gerba
767 Fifth Avenue
New York, New York 10153
Tel.: (212) 310-8000
Fax: (212) 310-8007
David.Yohai@weil.com
John.Gerba@weil.com

*Counsel for Plaintiff/Counterclaim-Defendant F.H.G. Corporation d/b/a Capstone Nutrition*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2016, I caused true and correct copies of Capstone's Motion to Dismiss Certain MusclePharm Amended Counterclaims Under Rule 12(b)(6), along with its supporting exhibits, and a Proposed Order Granting Capstone's Motion to Dismiss Certain MusclePharm Amended Counterclaims Under Rule 12(b)(6) to be served on all counsel of record by filing said documents with the Clerk of the Court via CM/ECF

*/s/_ David L. Yohai__*

WEIL GOTSHAL & MANGES LLP
David L. Yohai
767 Fifth Avenue
New York, New York 10153
Tel.: (212) 310-8000
Fax: (212) 310-8007
David.Yohai@weil.com

*Counsel for Plaintiff/Counterclaim-Defendant F.H.G. Corporation d/b/a Capstone Nutrition*